## JOHN SLOAN *vs.* HARUM MERRILL.

Suffolk. March 6, 7. — April 3, 1883. DEVENS & W. ALLEN, JJ., absent.

A., the agent of a corporation, had been in the habit of buying a certain kind of goods for the corporation through a broker, but had never bought on his own account. On one occasion, he told the broker that he would take a certain quantity of the goods at a price named. He intended to make this purchase on his own account, but the broker assumed that, on this occasion as on others, he was buying for the corporation, and the order was transmitted to and accepted by the seller as the order of the corporation. The broker's note named the corporation as buyer, the bill was made out to it, and the goods were stored and insured in its name. A. did not know this until it was done, but did before payment. He paid the bill with his own check, but did nothing else to assert his · claim as owner until he sold portions of the goods; and he did not change the name in which the goods were stored and insured. The goods were afterwards attached upon an execution against the corporation. *Held*, that A. could maintain an action against the attaching officer for the conversion of the goods. *Held, also*, the defendant having brought out, on cross-examination, that the plaintiff, when he sold portions of the goods in question, gave orders on the warehouseman in the name of the corporation, that the plaintiff was properly allowed to show, on reëxamination, that the broker's notes and the bills for such goods were for sales by him personally, and that the checks for the price were drawn payable to his order. *Held, also*, that the fact that one of such checks was made out after the date of the attachment was immaterial, it having been made by a third person in pursuance of a sale in the plaintiff's name before that date. *Held, also,* that the plaintiff was properly allowed to show that the books of the corporation contained no record of the purchase in question, or entries concerning it, and that the proceeds of sales were deposited with the funds of the corporation and credited to the plaintiff. *Held, also*, that the conversation between the plaintiff and the broker concerning the purchase was admissible to show what the plaintiff ordered, and what authority he gave on behalf of the corporation.

The fact that a plaintiff testifies that he will not swear that he did not authorize a broker to make a certain purchase, but that he has no distinct recollection of it, is not sufficient evidence of authority to the broker to warrant the defendant to put in evidence a telegram from the broker to an agent of his, concerning the subject matter inquired of.

HOLMES, J. This is an action of tort for the conversion of 500 half-rolls of jute bagging. The defendant, a deputy sheriff,

justifies under an attachment and execution against the Dolphin Manufacturing Company. The plaintiff has had a verdict, and the case is before us on exceptions. It will not be necessary to examine in detail the several rulings requested and refused, or made against the defendant's objection, as they all turn on the question whether the plaintiff's own statement of the purchase under which he claims the goods does not show, as matter of law, that they became the property of the above-named company.

The plaintiff was the president of the company, and its agent and manager in this class of dealings. He had been in the habit of buying through Moses and Cohen, brokers, and never before had bought on his own account. On this occasion, according to his testimony, having a legacy of $10,000 lying in his bank, he told Moses and Cohen that he would take a parcel of bagging, two thousand half-rolls, of which the five hundred in controversy were part, at nine and a half cents, making the price $9500. He intended to make this purchase on his own account, but the brokers assumed that, on this occasion as on others, he was buying for his company, and the order was transmitted to and accepted by the seller, the Tudor Company, as the order of the Dolphin Manufacturing Company. The brokers' note named the Dolphin Company as purchaser, the bill was made out to it, and the goods were stored and insured in its name. The plaintiff did not know this until it was done, but did before payment. When he received the bill he paid it with his own check, but did nothing else to assert his claim as owner until he sold portions of the goods again. He did not change the name in which the goods were stored or insured, regarding it, as he testified, of no importance.

On this state of facts, it may be conceded that, so far as the relations between vendor and purchaser were concerned, the Tudor Company had a right to look to the Dolphin Company, and did look to it alone. The seller certainly had this right, if the plaintiff's language to Moses and Cohen, interpreted in the light of his previous dealings with them, authorized a sale to the Dolphin Company, whatever may have been his meaning or intention. We assume, in favor of the defendant, that the seller had the same right, if there was no sale until the plaintiff sent his check in payment, and that sending the check without more,

after notice of the form of the transaction, was a ratification of it in that form, and not a substitution of the plaintiff as purchaser.

But these concessions do not help the defendant on the question of title. Take it, first, that there was no sale until the plaintiff paid, bearing in mind that, in either aspect, the Tudor Company was only interested to make the Dolphin Company its debtor, and that, if it got a paymaster with whose credit it was satisfied, it was not concerned whether the Dolphin Company purchased on its own behalf, or had an undisclosed principal behind it. Then what is the case ? The plaintiff had full power to use the name of the company, and therefore was able to buy in its name on his own behalf if he chose. The fact that he was the agent of the company to make its contracts did not prevent his using it as an agent for himself. And, whatever might have been his liability to the company, if he used the general powers conferred upon him improperly, still, if such a purchase had been executed and he had paid the price, a stranger could not successfully set up a title in the company against him. Moreover, the character of a given purchase in this respect rested solely on the private intentions of the plaintiff. For not only did it lie with him to determine whether the company should buy as principal or agent, and whether in the latter event he would be the principal, but, if he determined that he would be, he was not bound to disclose himself to the seller. If then the case is that the plaintiff, having only assented to a sale to himself, found that the ineffectual form of a sale to his company had been gone through with, and thereupon ratified it as a sale to himself through the medium of the Dolphin Company, he is to be taken to have adopted the name of the Dolphin Company for the purposes of that transaction, just as if he had originally directed the contract to be made in that form on his own behalf, and the sale stands on the ordinary footing of a sale to an undisclosed principal.

If, on the other hand, the contract was binding before the plaintiff knew of the mistake, and the case is that, in ordering a purchase for himself, he inadvertently introduced or authorized the introduction of the name of his company in such a way as to bind it, we think that he was equally entitled to be regarded as

principal and owner from the time that he executed the contract and freed the company from liability, even if he was not principal *ab initio.* It would not be a great stretch to say that, when the words introducing a third person into a contract are spoken solely to the end of making a contract on the part of the speaker, the contract is to be regarded as made with the speaker through the third person as agent, as well when he is introduced by accident as when his name is intentionally used. *Quacunque via,* the rulings asked for were wrong, and those that were given were not open to exception.

The defendant's exceptions to the admission and exclusion of evidence must also be overruled. The defendant having brought out, on cross-examination, that the plaintiff, when he sold parcels of the bagging in question, gave orders on the warehouseman in the name of the Dolphin Company, that being the name in which the goods were stored, the plaintiff was allowed to show, on reëxamination, that the brokers' notes and the bills for such parcels were for sales by him personally, and that the checks for the price were drawn payable to his order. These documents were all made out when the plaintiff had no interest to manufacture evidence; they showed acts of ownership on his part, and were admissible on reëxamination, as part of the same transactions concerning which the defendant had inquired, to explain them. We do not think that the circumstance that one check of the series was made out after the date of the attachment is sufficient ground for a new trial, as it was made by a third person in pursuance of a sale in the plaintiff's name before that date.

The plaintiff was also allowed to prove that the books of the Dolphin Company contained no record of the purchase in question and no entries concerning the same, and that the proceeds of sales were deposited with the funds of the Dolphin Company and credited to the plaintiff. Such facts went to show how the title was dealt with by the two parties between whom it lay, when there was no interest except to assert whatever rights they respectively had, and that the Dolphin Company did not set up any claim to the bagging or its proceeds.

The conversation between the plaintiff and Moses and Cohen, concerning the purchase, was admissible to show what the

plaintiff ordered, and what authority he gave on behalf of the Dolphin Company.

The remaining exception is to the exclusion of a telegram from Moses and Cohen requesting their correspondent " to squeeze in " a thousand half-rolls more. This was excluded on the ground that there was no evidence of authority. The only evidence on this point was the plaintiff's testimony that he would not swear that he did not tell Moses and Cohen to see what they could do about it, but that he had no distinct recollection of it. We understand him to have meant that he did not remember anything about it. This is not enough, and it is therefore unnecessary to consider whether the plaintiff testified to anything so definite concerning his legacy as to warrant the assumption that it was his only fund, and that therefore an order considerably exceeding it in value tended to contradict his story.                                        *Exceptions overruled.*

*D. E. Ware*, for the defendant.

*S. B. Allen*, ( *W. B. Allen* with him,) for the plaintiff.