## COMMONWEALTH *vs.* SILAS S. DREW.

Suffolk.    March 30, 1891. — May 19, 1891.

Present: C. ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Obtaining Goods by False Pretences — Indictment — Representation of Fact — Evidence.*

To constitute the offence of obtaining goods under the false pretence of carrying on business and dealing in the ordinary course of trade within the Pub. Sts. c. 203, § 60, it is not necessary that the pretence should be in the express words set out in the statute; it is enough if it is plainly and intelligibly made in any form of words.

An indictment alleged that S. S. D. of B., intending to obtain certain goods under "the false color and pretence of carrying on business and dealing in the ordinary course of trade," did falsely pretend and represent that "he, said D., was then and there carrying on the business of selling dry goods, wares, and merchandise at retail in two certain stores there in said B., and then and therein in said business dealing in the ordinary course of retail trade"; and "that he, said D., was then and there dealing in dry goods, wares, and merchandise in the ordinary course of retail trade, and in the manner in which dealers usually conduct and carry on such business." Then followed averments of pretences, all of which were merely the particulars and details which made up this general representation and pretence; and it was alleged that by these false representations and pretences the defendant obtained the goods. *Held*, that the indictment was intended to charge an offence under § 60 of the Pub. Sts. c. 203, and under no other ; and that the allegations were sufficient for that purpose.

Under the Pub. Sts. c. 203, § 60, providing for the punishment of one who, " with intent to defraud under false color and pretence of carrying on business and dealing in the ordinary course of trade, obtains from any person goods or chattels," a representation by a purchaser of goods that he wishes them for purposes of resale, in the regular course of his business as a retail dealer therein, will be taken as a statement of fact, and not as a promise, or a mere expression of a purpose, and if false and fraudulent will justify his conviction of such offence.

On an indictment under the Pub. Sts. c. 203, § 60, against a purchaser of goods for obtaining them on the false pretence of carrying on business and dealing in the ordinary course of trade, the testimony of the sellers of the goods as to what led them to make the sales is properly admitted.

At the trial of such an indictment, where it appears that the defendant, who previously had paid cash for his purchases, has bought from time to time large lots of goods on long terms of credit, and, instead of selling them at retail in the usual way, has disposed of them for less than half their value, the additional fact that, within about two or three months after the first of these transactions, he went into insolvency and filed a schedule showing very large indebtedness against him, is competent to be considered as confirmatory evidence of his fraudulent purpose in obtaining the goods.

INDICTMENT in twenty-seven counts. The first count alleged that Silas S. Drew, of Boston, on June 13, 1890, " at Boston aforesaid, being a person of an evil disposition, and devising and intending by unlawful ways and means to obtain and get into his hands and possession the goods, merchandise, chattels, and effects of the honest and good citizens of this Commonwealth, and with intent to cheat and defraud Ariel B. Crocker and Frederick I. Pratt, copartners, then doing business under the firm name and style of A. B. Crocker and Company, — and with the view and intent by means of and under the false color and pretence of carrying on business and dealing in the ordinary course of trade, hereinafter set forth, to obtain from said copartners the property, goods, and chattels of said copartners hereinafter mentioned, upon credit and with intention never to pay for the same, — did then and there unlawfully, knowingly, and designedly, falsely pretend and represent to said copartners that he, said Drew, was then and there carrying on the business of selling dry goods, wares, and merchandise at retail in two certain stores there in said Boston, and then and therein in said business dealing in the ordinary course of retail trade; that he, said Drew, was then and there dealing in dry goods, wares, and merchandise in the ordinary course of retail trade, and in the manner in which dealers usually conduct and carry on such business; that he, said Drew, then and there required the goods and chattels hereinafter mentioned in carrying on his, said Drew's, said business; that he, said Drew, then and there desired and intended to purchase the cloth, goods, and chattels hereinafter mentioned for the purpose of having said cloth made into suits and dresses, and of thereafter selling the said suits and dresses at retail, in carrying on his, said Drew's, said business and dealing in the ordinary course of retail trade at his, said Drew's, said stores; that he, said Drew, then and there intended to take the cloth, goods, and chattels hereinafter mentioned, after the same should have been manufactured into suits and dresses, to his, said Drew's, said stores for the purpose of selling the said suits and dresses at retail there in said stores to the customers of him, said Drew, and in the usual and ordinary course of retail trade in such goods and chattels that he, said Drew, then and there intended to pay for the said goods and

chattels hereinafter mentioned, when payment for the same should become due.

" And said Drew then and there asked and requested said copartners, in consideration thereof, then and there to sell and deliver to him, said Drew, upon credit from said copartners to him, said Drew, two thousand seven hundred and one and one half yards of cloth, and sixteen hundred forty-eight and three fourths yards of other cloth. And the said copartners, then and there believing the said false pretences and representations so made as aforesaid by the said Drew, and being deceived thereby, were induced by reason of the false pretences and representations so made as aforesaid to sell and deliver, and did then and there sell and deliver to the said Drew, upon credit as aforesaid, two thousand seven hundred and one and one half yards of cloth, each yard of the value of thirty-eight cents and sixteen hundred forty-eight and three fourths yards of cloth, each yard of the value of eight cents, of the property, goods, and chattels of the said copartners, which said cloth he, said Drew, did then and there, under the said false pretences and representations so made as aforesaid, receive and obtain from said copartners. And the said Drew did then and there receive and obtain the said goods, merchandise, chattels, and effects of the said copartners by means of the false pretences and representations aforesaid, and with intent to cheat and defraud.

" Whereas in truth and in fact, he, said Drew, was not then and there carrying on the business of selling dry goods, wares, and merchandise at retail in two certain stores there in said Boston, and then and therein in said business dealing in the ordinary course of retail trade, as aforesaid ; and he, said Drew, was not then and there dealing in dry goods, wares, and merchandise in the ordinary course of retail trade and in the manner in which dealers usually conduct and carry on such business, as aforesaid ; and he, said Drew, did not then and there require the goods and chattels hereinbefore mentioned in carrying on his, said Drew's, said business, as aforesaid ; and he, said Drew, did not then and there desire and intend to purchase the said cloth, goods, and chattels for the purpose of having said cloth made into suits and dresses, and of thereafter selling the said suits and dresses at retail in carrying on his, said Drew's, said

business, and dealing in the ordinary course of retail trade at his, said Drew's, said stores as aforesaid ; and he, said Drew, did not then and there intend to take said cloth, goods, and chattels, after the same should have been manufactured into suits and dresses, to his, said Drew's, said stores for the purpose of selling the said suits and dresses at retail there in said stores to the customers of him, said Drew, and in the usual and ordinary course of retail trade in such goods and chattels ; and he, said Drew, did not then and there intend to pay for said goods and chattels when payment for the same should become due, as aforesaid. All of which he, said Drew, then and there well knew.

" And so the jurors aforesaid, upon their oaths aforesaid, do say that the said Drew, by means of the false pretences aforesaid, on the said thirteenth day of June in the year of our Lord eighteen hundred and ninety, at Boston aforesaid, unlawfully, knowingly, and designedly did receive and obtain from said copartners the said goods, merchandise, chattels, and effects of the proper goods, merchandise, chattels, and effects of the said copartners, with intent to defraud said copartners of the same ; against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided."

The fifth, seventh, ninth, eleventh, twenty-first, and twenty-third counts were substantially in the same form as the first count, and differed only in respect to the kind of goods alleged to have been obtained by the defendant, and the persons from whom and the times at which they were obtained, the time alleged in the twenty-third count being August 23, 1890. The twenty-fifth, twenty-sixth, and twenty-seventh counts charged that the defendant obtained large quantities of goods in like manner on September 4, 1890.

At the trial in the Superior Court, before *Sherman*, J., the delivery of all the goods described in the various counts by the persons therein described, and their receipt by the defendant, were admitted. There was evidence tending to show that the defendant, for several years before June 1, 1890, had carried on the retail dry goods business at a store numbered 15 Tremont Row in Boston, and from October 1, 1889, to the same date, at a second store numbered 62 Hanover Street in that city ; that

on September 6, 1890, the defendant failed and went into insolvency; that up to June 1, 1890, the defendant for the most part had paid cash for all the dry goods purchased by him, but that after that date all purchases made by him, including the goods in question, were on long terms of credit, none of which had fallen due at the time of his failure; that all of the goods described in the various counts of the indictment were sold to him on his representation in each instance to the seller that he wanted the goods for the purpose of reselling them in the regular course of his business as a retailer of dry goods; that he obtained the goods in each instance on this pretence; that on twelve different occasions between May 24, 1890, and September 4, 1890, the defendant sold to a firm of New York auctioneers the entire stock of his Hanover Street store, including most of the goods in question, many of them in unbroken packages, which goods were then put into packing cases and carted away from the store for shipment; and that after the defendant went into insolvency the defendant filed a schedule of his creditors, signed and sworn to by him in the Court of Insolvency on September 27, 1890, showing that at the time of his failure he owed a very large amount for merchandise. The various witnesses for the government, who testified to the representations made by the defendant when he purchased the goods, while differing in the language used by them, all agreed that the representations made to each of them by him were to the effect that he anticipated a good retail business in his two stores during the months to come, and that he wished the goods for the purpose of retailing them in the regular course of his business in these stores. These witnesses were also permitted to testify, against the defendant's objection, that the inducement which led them to sell the defendant the goods and to give him long terms of credit was his statement in each instance that he wished the goods for resale in the regular course of his business as a retail dealer in such goods.

The government offered in evidence a properly authenticated copy of the schedule of creditors filed by the defendant, which the judge admitted, against the defendant's objection, as tending to prove the intent of the defendant at the time of making the alleged representations.

The defendant offered no evidence, and requested the judge to order the jury to return a verdict of not guilty. The judge refused so to rule, and submitted the case to the jury, who returned a verdict of guilty upon the counts first above mentioned; and the defendant alleged exceptions.

*R. M. Morse, Jr. & T. Hunt,* (*E. A. Alger* with them,) for the defendant.

*A. E. Pillsbury,* Attorney General, *& G. C. Travis,* First Assistant Attorney General, for the Commonwealth.

KNOWLTON, J. The evidence in this case tends to show that for several years prior to June 1, 1890, the defendant had been in the business of selling dry goods at retail, having all the time one store, and during the last part of the time two stores, in Boston; that up to that date he paid cash for substantially all dry goods purchased, but after that, until his failure on September 6, 1890, he made large purchases from numerous persons, all on long terms of credit, none of which had expired at the time of his failure. It was also found, that on twelve different occasions between May 24, 1890, and September 4, 1890, he sold to auctioneers in New York the entire stock of the Hanover Street store, at prices which were only forty to fifty per cent of the regular wholesale price of such goods; and the evidence tended to show that most of the goods bought between these dates were sold in this way, and boxed up and shipped away.

The principal question argued before us arises on the defendant's request to the presiding justice to order a verdict of acquittal on the ground that there was no evidence on which he could be convicted. On each of the counts now before the court the evidence tended to show a representation by the defendant that he wanted the goods for the purpose of selling them in the regular course of his business as a retailer of dry goods, and that he obtained them on this pretence. It is contended that such a representation is of a promissory nature, and if false and fraudulent cannot be the foundation of a conviction for obtaining goods on false pretences. The Pub. Sts. c. 203, § 60, (St. 1863, c. 248, § 2,) provide that " whoever, with intent to defraud under false color and pretence of carrying on business and dealing in the ordinary course of trade, obtains from any person goods or chattels shall be punished," etc. Each

of the counts on which the defendant was convicted is founded on this statute. They are all alike in substance, and are drawn in the very words of the statute. They allege that the defendant intended to obtain the goods under the " false color and pretence of carrying on business and dealing in the ordinary course of trade," and that he did falsely pretend and represent " that he, said Drew, was then and there carrying on the business of selling dry goods, wares, and merchandise at retail in two certain stores there in said Boston, and then and therein in said business dealing in the ordinary course of retail trade; that he, said Drew, was then and there dealing in dry goods, wares, and merchandise in the ordinary course of retail trade, and in the manner in which dealers usually conduct and carry on such business." Then follow allegations of pretences, all of which are merely the particulars and details which made up this general representation and pretence, and it is alleged that by these false representations and pretences he obtained the goods. It seems very clear that each of these counts was intended to charge an offence under this section, and under no other, and the allegations are sufficient for that purpose.

The false pretence made punishable under this section relates not merely to the general mode of dealing of him who makes it, but to the nature of the transaction in which he is then engaged. If he is the proprietor of a retail store, and buys goods in the usual way to be sold therein, he is " carrying on business and dealing in the regular course of trade "; but if he buys goods to be carried away and sold at wholesale for half their value he is not " dealing in the ordinary course of trade." The representation of his intention in regard to the disposition of the property may be an important element in the pretence that he is dealing in the ordinary course of trade.

Indeed, it may be the characteristic and distinguishing feature of the false pretence. The act of purchase, in its external features, is the same whether it is in the ordinary course of dealing, or a wrongful procurement of property with intent to defraud. The intention of the purchaser in reference to the disposition of the goods makes it the one or the other, and his statement of that intention, in connection with a representation that he is the proprietor of a retail store, may be in itself a statement that he

is dealing in the ordinary course of trade, or that he is not, according as he says that he expects to sell the goods in his store in the usual way, or that he intends to devote them to a different kind of use. Under this section, therefore, it must be held to be a statement of a fact, and not a promise, or a mere expression of a purpose. *Commonwealth* v. *Walker*, 108 Mass. 309.

The evidence on each of the counts was sufficient to warrant the jury in finding that the defendant made the false pretence mentioned in this section. To constitute the offence, it is not necessary that the pretence should be made in the express words set out in the statute. It is enough if it is plainly and intelligibly made in any form of words. There was also evidence on each count tending to show that this pretence was the inducement which led to the sale. The evidence of the witnesses as to what led them to make the several sales was properly admitted.

It is contended that the schedule of the defendant's creditors, signed and sworn to by him, and filed in the Court of Insolvency on September 27, 1890, should not have been received in evidence. It was an admission by him of the statement set out in it, and was an act which, if it had any significance in regard to these charges, was rightly brought to the attention of the jury. It related to his condition on September 6, 1890; for the case finds that he failed then, and did no business, and presumably contracted no large debts afterwards. There was evidence that he was in good credit on June 1, 1890, and that up to that time he regularly paid cash for all dry goods he purchased. In *Commonwealth* v. *Jeffries*, 7 Allen, 548, it was held, after much consideration, that in a case of this kind the fact of the defendant's insolvency at the time of obtaining the goods was important evidence on the question whether he had a fraudulent intent. In the present case the pretence set out in the twenty-third count is alleged to have been made on August 23, 1890, only fourteen days before the failure, and we have no doubt that it was within the discretion of the presiding judge on the evidence in the case to admit the schedule, on the ground that it tended to show what his financial condition was on August 23. There was no attempt to distinguish between the applicability of the evidence to this count, and to the counts relating to transactions earlier in the

summer; and if there had been, we are not prepared to say that there was not enough in the case to warrant the judge in his discretion in receiving it as indicating the defendant's financial condition in June, 1890. Besides, there were other counts in the indictment on which he was not convicted, charging offences of the same kind as late as September 4, 1890. We are of opinion that the evidence was also competent on an entirely independent ground. The case finds that a man who had previously paid cash for his purchases buys large lots of goods, worth many thousands of dollars, and pays nothing for them, but obtains long terms of credit on all the purchases, and, instead of selling them at retail in the usual way, disposes of them for less than half their value. This indicates a general scheme of fraud, and we are of opinion that the additional fact that, within about three months after the first of these transactions, he goes into insolvency and files a schedule showing a very large indebtedness against him, is competent to be considered as confirmatory evidence of his fraudulent purpose in devising the scheme and obtaining the goods.                    *Exceptions overruled.*