## COMMONWEALTH *vs.* EDWARD F. O'BRIEN.

Bristol.     October 24, 1898. — November 28, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Obtaining Money by False Pretences — Indictment — Defence — Evidence —
Common Law and Statute — Criminal Intent — Instructions.*

An indictment, under Pub. Sts. c. 203, § 59, alleged that the defendant, at a time
and place in this Commonwealth named, with intent to cheat and defraud A.,
falsely pretended that certain property situated at N. in another State was
"then and there" solely owned by the defendant, that there was no encumbrance
upon it, that he did not owe a dollar to any one, and that he intended to organ-
ize a corporation and become an owner of stock in it by turning over the prop-
erty to the proposed corporation in exchange for stock; that the defendant
"then and there" executed and delivered to A. an instrument, which was set
out, and which promised to convey twenty shares of the corporation to A. in
consideration of $2,000; and that A. "then and there," believing the representa-
tions, was induced thereby to deliver and did deliver a check for $2,000 to the
defendant upon the execution and delivery of such instrument; and negatived
most, but not all, of the alleged pretences. *Held,* that it was sufficiently alleged
that the delivery of the instrument was made the condition of the payment, and
that the condition was performed and accepted as performed by A.; that the
words "then and there" in each instance referred to the time and place of the
representations, and not to N.; and that it was not necessary to allege that the
instrument was falsely made, and enough of the alleged pretences were negatived
to show that the scheme was fraudulent.
It is no defence to an indictment for obtaining money by false pretences, that an
agreement, upon the execution and delivery of which by the defendant the
money was paid, was illegal.
At the trial of an indictment for obtaining money from A. by false pretences, evi-
dence of A. that the alleged representations satisfied him and induced him to give
the defendant the money, and that he would not have parted with the money
but for them, is admissible.
At the trial of an indictment for obtaining money by false pretences that certain
property was owned by the defendant solely, and that he intended to organize a
corporation and become a large owner of stock in it by turning over the property
to the proposed corporation in exchange for stock, no exception lies to the refusal
to rule that there was no evidence that the defendant did falsely pretend that he
proposed and intended to become a large owner of stock in the corporation by
turning over the property in exchange for it; the statements testified to being
that the defendant stated that he intended to form a corporation and would
deliver stock to the witness, who was the defrauded person.
If representations of the defendant, in an indictment for obtaining money by false
pretences, that he owned certain property solely, that there was no encumbrance
upon it, and that he did not owe a dollar to any one, were false, he is not entitled
to a ruling that the jury should acquit him, unless they should find the further
representations that he intended to form a corporation and exchange the prop-

erty for stock to have been false, as charged; and, if the evidence shows that A.'s money was obtained by a fraudulent scheme, the jury are warranted in finding that the pretences were false throughout.

At the trial of an indictment for obtaining money by false pretences that certain looms and machinery were owned by the defendant solely, and that "upon said looms and machinery there was no encumbrance," the defendant requested the ruling that there was no evidence that the property was encumbered on the date when the representations were made. The judge instructed the jury that there was no such evidence, and that the government's position was not that the defendant owned the property and that it was encumbered, but that he did not own it at all and never had owned it. *Held,* that the defendant had no ground of exception.

If a person is indicted, under Pub. Sts. c. 203, § 59, for obtaining money by false pretences, it is immaterial that by the common law of this Commonwealth the offence charged is not a crime, or what the common law of another State is, where the first conversation between the parties took place.

It is immaterial whether the intent of a person charged with obtaining money by false pretences was consciously directed to law breaking.

If it is proved that the defendant in an indictment for obtaining money by false pretences that certain property was owned by him solely, that there was no encumbrance upon it, that he did not owe a dollar to any one, and that he intended to form a corporation and exchange the property for stock, pretended to own the property and did not, he is not entitled to ask that a verdict be directed for him.

At the trial of an indictment for obtaining money from A. by false pretences that certain property was owned by the defendant solely, that there was no encumbrance upon it, that he did not owe a dollar to any one, and that he intended to form a corporation and exchange the property for stock, the defendant asked a ruling that the jury might find the false pretences as to the defendant's ownership and freedom from debt immaterial. The judge instructed the jury that these were the representations upon which the government relied; and that, if the inducement to A. was complete in another State, where the first conversation took place, and the representations made here were not the inducement and operative cause to A. to part with his money, then the defendant should be acquitted, although he repeated the false representations to A. here before the money was delivered. *Held,* that this was sufficiently favorable to the defendant.

INDICTMENT, under Pub. Sts. c. 203, § 59, alleging that the defendant, " of Newport in the State of Rhode Island," on October 31, 1894, at Taunton, " with intent to cheat and defraud one Lawrence A. Kearns, did then and there unlawfully, knowingly, and designedly falsely pretend and represent to said Kearns that certain property, to wit, certain looms and machinery situated in said Newport which he," the defendant, then and there had in his possession, and with which he was then at said Newport manufacturing webbing and elastic goods, were " then and there the property of him," the defendant, " and were then and there solely owned by him," the defendant; " that upon

said looms and machinery there was no encumbrance"; that the defendant " did not then owe a dollar to any one"; that the defendant " did then and there propose and intend to organize with others, on or before the first day of December, A. D. 1894, a certain corporation, to wit, the Newport Web Company, and become a large owner of stock of said company by turning over, selling, and delivering said property in payment and exchange therefor to said company"; that the defendant " did then and there execute and deliver to the said Kearns a written instrument of the tenor following, that is to say : — Know all men by these presents that I, Edward F. O'Brien, of the city and county of Newport in the State of Rhode Island, etc., in consideration of two thousand $2,000 dollars and other good. and valuable considerations to me paid by Lawrence A. Kearns, of the city of Taunton in the Commonwealth of Massachusetts, do hereby agree that on the incorporation of the Newport Web Company, a corporation which is proposed and intended to be organized by me with others on or before December 1 next hereafter, I will convey unto him, the said Kearns, twenty shares of the preferred capital stock of said corporation of the par value of one hundred dollars, each carrying seven per cent interest; and I agree to vote with the said Kearns at the first meeting of the members of said corporation to employ him as the agent thereof in the city of Boston in said Massachusetts, for the purpose of making sales of the product of said Newport Web Company, and generally in connection with the business thereof in said Boston, at a salary of nine hundred dollars per year, payable monthly, with an additional remuneration of five per centum of the net returns of all sales made by him."

The indictment further alleged that Kearns, " then and there believing the false pretences and representations so made" by the defendant, " and being deceived thereby, was induced by reason of the false pretences and representations so made as aforesaid, to deliver, and did then and there deliver" to the defendant " upon the execution and delivery to him, said Kearns," by the defendant " of the written agreement aforesaid, a check and order for the payment of money of the amount and of the value of two thousand dollars" of the goods, moneys, and effects of Kearns; and that the defendant then and there received and

obtained the moneys and effects of Kearns by means of the false pretences and representations, and with intent to cheat and defraud the said Kearns of the same moneys. " Whereas in truth and in fact the said looms and machinery in the possession of and used by the " defendant " at said Newport, in manufacturing webbing and elastic goods as aforesaid, were not then and there the property of " the defendant, " and were not then and there solely owned by " him, " and said looms and machinery were not then and there free from encumbrance," and the defendant " did then owe large sums of money to divers persons," and he " did not then propose and intend to organize as a corporation the Newport Web Company " on or before December 1, 1894, " and convey to said Kearns twenty shares of the preferred capital stock of said corporation," and that the defendant did not then propose and intend to vote with said Kearns to employ him as agent as alleged, with the salary and remuneration alleged, all of which he then and there well knew.

In the Superior Court, before *Bishop*, J., there were motions to quash and strike out parts of the indictment which were overruled; and the jury returned a verdict of guilty. The defendant alleged exceptions, which appear in the opinion.

*J. W. Cummings*, (*C. R. Cummings* with him,) for the defendant.

*A. J. Jennings*, District Attorney, (*M. R. Hitch*, Assistant District Attorney with him,) for the Commonwealth.

HOLMES, J.    This is an indictment for obtaining money by false pretences. The trial of the case was obscured by an excessive number of objections and requests for rulings. We shall confine ourselves to disposing of the points insisted on in the argument. *Commonwealth* v. *Devlin*, 141 Mass. 423, 432.

1. The motion to quash, and the accompanying motion to strike out certain passages from the indictment, which, for the sake of the argument, we treat as offering further reasons for the motion to quash, were properly overruled. The indictment alleges false pretences that certain property was owned by the defendant solely, that there was no encumbrance upon it, that the defendant did not owe a dollar to any one, and that he intended to organize a corporation and become an owner of stock

in it by turning over the property to the proposed company in exchange for stock. It then alleges that the defendant executed and delivered to the defrauded party, one Kearns, an instrument, which is set out and which promises to convey twenty shares of the corporation to Kearns in consideration of two thousand dollars. It then alleges that Kearns was induced by the false pretences to deliver and did deliver a check for two thousand dollars to the defendant upon the execution and delivery of the above mentioned instrument.

.The first objection is that it is not alleged whether the two thousand dollars were obtained by sale or how otherwise, and that it does not appear that Kearns accepted the instrument. It is alleged that Kearns was induced to and did hand over the check " upon " the execution and delivery to him of the instrument, and that the instrument was delivered to him. This is a sufficient allegation that the delivery was made the condition of the payment, and that the condition was performed, and accepted as performed by Kearns. In *Commonwealth* v. *Dunleay*, 153 Mass. 330, in order to complete the fraud it was necessary to show, not only that a forged application for insurance had been delivered to the defrauded insurance company, but that the company had assented to the application and so supposed itself to have a contract. The decision does not mean that an instrument can be delivered without being accepted, but that the proposal in the instrument also should have been shown to have been accepted. Here acceptance of the instrument was all that was needed. As to its not appearing whether the money was obtained by sale or how otherwise, all the elements of fact in the transaction are stated within the requirements of *Commonwealth* v. *Strain*, 10 Met. 521, 523, and it is unnecessary to give them a legal name. The connection between the representations and the result is sufficiently plain. It is true, to turn to another matter, that the intent alleged is not an intent to make the bargain which was made, or to obtain the specific check or amount which is alleged to have been obtained. But this is not like the case where the purpose of the fraud is to sell or to obtain a specific object, and the representations are made concerning the object and to that end, as in *Commonwealth* v. *Goddard*, 4 Allen, 312, and *Commonwealth* v. *Lannan*, 1 Allen, 590.

The defendant's intent at the time of the representations may have been, and presumably was, merely to get what he could in exchange for what he could induce Kearns to take, but that would be enough. See *Commonwealth* v. *Howe,* 132 Mass. 250. It is alleged that he received and obtained the money by means of the representations with intent to defraud Kearns of the money.

Next it is said that, as the representation was that the property was at Newport in Rhode Island, the allegations following the word Newport, to the effect that the defendant represented that the property was "then and there" owned by the defendant, that he "then and there" delivered the instrument, and that Kearns "then and there," believing, etc., was induced, etc., must be referred to Newport as the nearest antecedent, and so the crime was not completed in this State. But upon reading the whole paragraph it is plain that the "then and there" in each · instance refers to the time and place of the representation, which was at Taunton. *Jeffries* v. *Commonwealth,* 12 Allen, 145, 151, 152. See *Commonwealth* v. *Call,* 21 Pick. 515, 521. There is no real uncertainty as to the meaning of the words as in *Commonwealth* v. *Wheeler,* 162 Mass. 429, and *Jeffries* v. *Commonwealth* is in point.

The next objection is that the agreement set forth contained an illegal undertaking to vote with Kearns to employ Kearns as agent of the company, and that this takes away the criminal character of the fraud, as the money was parted with for an unlawful purpose. *McCord* v. *People,* 46 N. Y. 470. *State* v. *Crowley,* 41 Wis. 271, 281, 282. If we assume that the promise was not merely not enforceable, but illegal, as may result from a comparison of *Guernsey* v. *Cook,* 120 Mass. 501, and *Woodruff* v. *Wentworth,* 133 Mass. 309, 314, with *Bishop* v. *Palmer,* 146 Mass. 469, 474, the question remains whether the conclusion follows. As is pointed out by Peckham, J., in his dissent in 46 N. Y. 475, the criminal law has a public end in view, namely to deter people from swindling. With the greatest respect for the New York and Wisconsin courts, we think this end is more effectually reached if we do not read into the absolute words of the statute (Pub. Sts. c. 203, § 59) an implied exception which allows a knave to cheat any one out of his

money if the knave can succeed in persuading his victim into a scheme which has any technical element of illegality on the victim's side. The question of allowing the latter a personal remedy is essentially different. See *Commonwealth* v. *Smith,* 129 Mass. 104, 111; *Commonwealth* v. *Morrill,* 8 Cush. 571; *Commonwealth* v. *Langley,* 169 Mass. 89, 90, 92; *Commonwealth* v. *Henry,* 22 Penn. St. 253; 2 Bish. Crim. Law, §§ 468, 469.

In support of the second motion above mentioned, it is urged that the instrument is not alleged to have been falsely made, and that some of the alleged pretences are not negatived. There was no need of the former allegation. The instrument made, no doubt, the contract which it affected to make. As to the pretences, they all formed part of one single scheme of getting Kearns to take stock in the corporation supposed to be projected. Enough are negatived clearly and sufficiently to show that the scheme was fraudulent. *Commonwealth* v. *Morrill,* 8 Cush. 571. *Commonwealth* v. *Parmenter,* 121 Mass. 354. *Commonwealth* v. *Stevenson,* 127 Mass. 446.

2. Exception was taken to the admission of Kearns's testimony that the representations alleged satisfied him and induced him to give the defendant the check, and that he would not have parted with the check but for them. The testimony went directly to one of the issues, and was admissible. The verbal criticisms on the form do not impress us. *Commonwealth* v. *Drew,* 153 Mass. 588, 592, 595.

3. The charge is excepted to because it told the jury that it was not necessary to discuss the law of cases of crimes begun in one State and finished in another, as if it had told the jury to disregard evidence of what happened in Rhode Island. The instruction was wholly in favor of the defendant, and was coupled with the statement that a conviction here must be had upon pretences made here, and not in Rhode Island.

4. Thirty-seven rulings were asked. Exceptions were saved as to those numbered 3, 4, 5, 6, 7, 9, 10, 11, 14, 19, 23, 24, 25, 28, 29, 30, 31, 33, 35, and 37. The third was to the effect that there was no evidence that the defendant did propose and intend to become a large owner of stock in the company by turning over the property in exchange for it. The indictment does not allege that the defendant proposed and intended but that

he pretended that he proposed and intended. Whether true or false, this pretence was equally consistent with his scheme, and indeed to make it was a necessary part of the scheme. It is true that Kearns did not testify to an express statement of such an intent by the defendant. But the statements which were testified to, that the defendant intended to form a corporation and would deliver stock to the witness, imported it as plainly as if it had been stated in terms.

The fourth request required the jury to acquit, unless they found the last mentioned pretence false. But if it had been true that the defendant intended to form a corporation and exchange this property for stock, as very likely it was, still, if the pretences as to his ownership, his freedom from debt, and the freedom of the property from encumbrance were false, his ability to perform his contract for which Kearns gave his check was impaired to that extent, and the check was obtained by fraud. *Commonwealth* v. *Lee*, 149 Mass. 179, 184. We may add with reference to the seventh request, — viz. that there was no evidence that the defendant falsely pretended that he proposed to form a corporation, etc., — that, in view of the evidence that Kearns's money was obtained by a fraudulent scheme, the jury were warranted in finding that the pretences were false throughout, as they did find that the most material among them were. Furthermore, the judge instructed the jury that the government did not ask a conviction upon the allegations in the indictment that the defendant [pretended that he] intended to form a corporation, etc. We do not think that the fifth, sixth, and twenty-ninth requests need further remark.

The eleventh and fourteenth rulings asked were that the jury should disregard the allegation "that upon the looms and machinery there was no encumbrance," (we presume the allegation that the defendant made pretences to that effect was meant,) "because it is not properly . . . negatived," etc., and that there was no evidence that the property was encumbered on the date when the representations were made. The judge instructed the jury that there was no such evidence, and that the government's position was not that the defendant owned the property and that it was heavily encumbered, but that he did not own it at all, and never had owned it.

The twenty-fourth ruling asked, that by the common law of Massachusetts the offence charged was not a crime, was immaterial, as there was a statute which made it one. Still more immaterial is the twenty-third, as to the common law of Rhode Island, and we can perceive no bearing of any proper sort which it could have upon the case. This disposes also of the nineteenth request. It is suggested that, if his conduct was lawful under the law of Rhode Island, it has a bearing upon the defendant's criminal intent. It is perfectly immaterial whether his intent was consciously directed to law breaking. His ignorance of the law would have made no difference in his liability. If he knew that his representations were false, and if he intended to deceive by them, and by the help of the motives thus created to get Kearns's property, he had the only criminal intent which the statute requires.

The twenty-fifth request was to direct a verdict for the defendant. This does not need special discussion. It was proved that the defendant pretended to own the property, and did not. It was a natural inference that this pretence led or helped to lead Kearns to part with his money on receiving the contract set out.

The twenty-eighth ruling asked was that the jury might find the false pretences as to the defendant's ownership and freedom from debt immaterial. The judge instructed the jury, as we have said, that these were the representations upon which the government relied. He also instructed them that, if the inducement to Kearns was complete in Rhode Island, where the first conversation took place, and the representations made in Taunton were not the inducement and operative cause to Kearns to part with his money, then the defendant should be acquitted, although he repeated the false representations to Kearns at Taunton before the check was delivered. This was sufficiently favorable to the defendant.

The thirtieth ruling asked turns on the illegality of the agreement, and has been disposed of in dealing with the motion to quash. The thirty-seventh was covered by the instruction just mentioned under the head of the twenty-eighth request.

No other exceptions were argued.

*Exceptions overruled.*