## COMMONWEALTH *vs.* JOSEPH F. RYAN.

Suffolk.   February 1, 1892. — February 24, 1892.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Master and Servant — Possession — Embezzlement — Larceny.*

On a complaint for embezzlement, the evidence was that the defendant was employed by S. in his store as a bar-tender; that S. sent a detective to the store with marked money belonging to S. to make a feigned purchase from the defendant; that the defendant, upon the detective's making the purchase, received the money and dropped it into the money draw of a cash register, which was opened in connection with another sale, without registering the sale to the detective; and that shortly afterwards the defendant removed and appropriated the money. *Held,* that a ruling requested by the defendant, that after the money was put in the drawer it was in S.'s possession, and the subsequent removal by the defendant was larceny, was rightly refused, and an instruction to the jury that, if the defendant before placing the money in the drawer intended to appropriate it, and with that intent simply put it in the drawer for his own convenience in keeping it for himself, that would not make his appropriation of it just afterwards larceny, was correct; and that S.'s ownership of the money did not prevent the defendant's act from being embezzlement.

COMPLAINT, for embezzlement. Trial in the Superior Court, before *Thompson*, J., who allowed a bill of exceptions, in substance as follows.

It appeared in evidence that one Sullivan, who was a member of a partnership which employed the defendant, had hired two detectives to proceed to the liquor store of the firm in Boston, where the defendant was employed, and had arranged with them to have passed in the store, for the purchase of liquors from the defendant, certain marked bills; that Sullivan met one of the detectives a short distance from the store, and gave him three marked bills and a silver dollar; that the other detective stationed himself in the store, in front of a bar, behind which the defendant worked as a bar-tender; that behind the bar, on a shelf level with the bar, was what is called a cash register, with a drawer for the bills and coins received in the course of business, the amount of each purchase being registered by working a mechanical device and showing a disk with the amount thereon of the purchase which was so registered; that one of the detectives named Lamb went to the store and purchased of the defendant, with the bills and money given him by Sullivan, certain whiskey and brandy, of the value in all of four dollars; that the defendant, after making the sale to Lamb, went behind the bar near the cash register with some bills crumpled in his hand; that he did not register the sale made to Lamb, but he then made another sale to a customer, which he registered, dropping the crumpled bills in the open drawer while he did so; that he afterwards took the same crumpled bills from the drawer, and went from behind the bar; that the detective then gave a signal, and the defendant was called into the office and charged with this offence, the marked bills being subsequently found, with other money not claimed to have been embezzled, upon his person.

The witnesses for the government also testified that the drawer of the cash register in which the defendant placed the money was a receptacle for the money received for the sales of goods of the firm; that during the day the bar-keepers, of whom the defendant was one, made use of the money in the drawer as was necessary in making change, and at the close of business at night one or the other of the partners took the

money from the drawer and balanced it with the sums shown by the register to have been received; that the money given by Sullivan to the detective was the money of the partnership, and was only handed to the detective for the purpose of making said pretended purchase, and that the liquors obtained by the detective by the money were the goods of the partnership, and were to be returned to the partnership.

Upon this evidence, which was all the material evidence, the defendant asked the judge to rule that, if any offence was committed, it was the offence of larceny, and not embezzlement; but the judge refused so to rule, and the defendant excepted.

Thereupon the defendant testified in his own behalf, and produced other witnesses whose testimony tended to contradict the evidence introduced by the government, the defendant claiming, while he admitted he had the marked bills upon his person, that they were taken from the drawer by him in change for a larger bill which he himself had upon his person, and placed in the drawer in their stead, which there was no dispute that he had a right to make.

At the close of all the evidence in the case, the defendant renewed his request to the judge to rule that there was a variance between the proof and the offence charged; and that the offence which was proved, if any offence, was larceny, and not embezzlement. The judge declined so to rule; and the defendant excepted. Thereupon the defendant requested the court to instruct the jury as follows:

" 1. If the jury should find, upon all the evidence, that the defendant placed the money received for the sale of the whiskey and brandy in the money drawer, then any subsequent taking by him of that money or other money out of the drawer would not be embezzlement, and the defendant cannot be convicted upon this complaint.

" 2. If the money intrusted to the detective by Sullivan, the partner, was the money of said partnership, and the property pretended to be purchased of defendant was still theirs, even if the jury should find that the defendant took said money without returning it to the drawer, or even after returning it to the drawer, still he could not be convicted upon this charge."

These instructions the judge declined to give, and the defendant duly excepted.

The judge then instructed the jury that, "if the defendant placed the money received from the detective Lamb in the money drawer of his employers for the purpose and with the intent of turning over the same to his employers, the money so placed by him in the drawer would, when placed there, be in the possession of his employers, and if the defendant then took the money from the drawer with the intent of depriving the owners of the same the offence would be larceny, and not embezzlement, and the jury should return a verdict of not guilty; but if the defendant, when he received the three one-dollar bills from Lamb for the whiskey and brandy sold Lamb, or after he received the bills and before he placed them in the money drawer of his employers, had the purpose and intent to appropriate the same to his own use, to embezzle them, and having that purpose and intent simply placed the bills in the drawer as his own, and for his own personal convenience in the holding and keeping of the same for himself, and not for the purpose of turning over and delivering the same to his employers, such placing of the bills in the drawer would not be such a delivery of the bills to his employers as to make the appropriating of the same to his use larceny and not embezzlement"; and that "the fact that the three one-dollar bills were taken by Sullivan from his own pocket, and were the money of the employers of the defendant when delivered to Lamb, and were delivered to Lamb for the purpose of trying the fidelity of the defendant, did not change the character of the possession by the defendant so as to make the appropriating of the same to his own use, before they were turned over to his employers, larceny, and not embezzlement."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*M. O. Adams*, for the defendant.

*A. E. Pillsbury*, Attorney General, and *C. N. Harris*, Second Assistant Attorney General, for the Commonwealth.

HOLMES, J. This is a complaint for embezzlement of money. The case for the government is as follows. The defendant was employed by one Sullivan to sell liquor for him in his store. Sullivan sent two detectives to the store, with marked money of Sullivan's, to make a feigned purchase from the defendant. One

detective did so. The defendant dropped the money into the money drawer of a cash register, which happened to be open in connection with another sale made and registered by the defendant, but he did not register this sale, as was customary, and afterward — it would seem within. a minute or two — he took the money from the drawer. The question presented is whether it appears, as matter of law, that the defendant was not guilty of embezzlement, but was guilty of larceny, if of anything. The defendant asked rulings to that effect on two grounds : first, that after the money was put into the drawer it was in Sullivan's possession, and therefore the removal of it was a trespass and larceny ; and secondly, that Sullivan's ownership of the money, in some way not fully explained, prevented the offence from being embezzlement. We will consider these positions successively.

We must take it as settled that it is not larceny for a servant to convert property delivered to him by a third person for his master, provided he does so before the goods have reached their destination, or something more has happened to reduce him to a mere custodian ; *Commonwealth* v. *King*, 9 Cush. 284; while, on the other hand, if the property is delivered to the servant by his master, the conversion is larceny. *Commonwealth* v. *Berry*, 99 Mass. 428. *Commonwealth* v. *Davis*, 104 Mass. 548.

This distinction is not very satisfactory, but it is due to historical accidents in the development of the criminal law, coupled, perhaps, with an unwillingness on the part of the judges to enlarge the limits of a capital offence. 2 Leach, (4th ed.) 843, 848, note ; 1 Leach, (4th ed.) 35, note; 2 East, P. C. 568, 571.

The history of it is this. There was no felony when a man received possession of goods from the owner without violence. Glanv., bk. 10, c. 13. Y. B. 13 Edw. IV. 9, pl. 5. 3 Co. Inst. 107. The early judges did not always distinguish clearly in their language between the delivery of possession to a bailee and the giving of custody to a servant, which indeed later judges some times have failed to do. E. g. Littleton in Y. B. 2 Edw. IV. 15, pl. 7. 3 Hen. VII. 12, pl. 9. *Ward* v. *Macauley*, 4 T. R. 489, 490. When the peculiar law of master and servant was applied either to the master's responsibility or to his possession, the test seems to have been whether or not the servant was under the master's eye, rather than based on the notion

of *status* and identity of person, as it was at a later day. See *Byington* v. *Simpson*, 134 Mass. 169, 170. Within his house a master might be answerable for the torts of his servant, and might have possession of goods in his servant's custody, although he himself had put the goods into the servant's hands; outside the house - there was more doubt; as when a master intrusted his horse to his servant to go to market. Y. B. 21 Hen. VII. 14, pl. 21. T. 24 Edw. III. Bristol, in Molloy, De Jure Maritimo, bk. 2, c. 3, § 16. Y. B. 2 Hen. IV. 18, pl. 6. 13 Edw. IV. 10, pl. 5; *S. C.* Bro. Abr. Corone, pl. 160. Staundforde, I., c. 15, fol. 25; c. 18, fol. 26. 1 Hale, P. C. 505, note. See *Heydon & Smith's case*, 13 Co. Rep. 67, 69; *Drope* v. *Theyar*, Popham, 178, 179; *Combs* v. *Bradley*, 2 Salk. 613; and, further, 42 Ass. pl. 17, fol. 260; 42 Edw. III. 11, pl. 13; Ass. Jerus. (ed. 1690), cc. 205, 217. It was settled by St. 21 Hen. VIII. c. 7, that the conversion of goods delivered to a servant by his master was felony, and this statute has been thought to be only declaratory of the common law in later times, since the distinction between the possession of a bailee and the custody of a servant has been developed more fully, on the ground that the custody of the servant is the possession of the master. 2 East, P. C. 564, 565. *The King* v. *Wilkins*, 1 Leach, (4th ed.) 520, 523. See Kelyng, 35; Fitzh. Nat. Brev. 91 E; *Blosse's case*, Moore, 248; *S. C.* Owen, 52, and Gouldsb. 72. But probably when the act was passed it confirmed the above mentioned doubt as to the master's possession where the servant was intrusted with property at a distance from his master's house in cases outside the statute, that is, when the chattels were delivered by a third person. In Dyer, 5*a*, 5*b*, it was said that it was not within the statute if an apprentice ran off with the money received from a third person for his master's goods at a fair, because he had it not by the delivery of his master. This, very likely, was correct, because the statute only dealt with delivery by the master; but the case was taken before long as authority for the broader proposition that the act is not a felony, and the reason was invented to account for it that the servant has possession, because the money is delivered to him. 1 Hale, P. C. 667, 668. This phrase about delivery seems to have been used first in an attempt to distinguish between servants and bailees; Y. B. 13 Edw. IV. 10, pl. 5; Moore, 248; but as used here it is a per-

verted remnant of the old and now exploded notion that a servant away from his master's house always has possession.    The old case of the servant converting a horse with which his master had intrusted him to go to market was stated and explained in the same way, on the ground that the horse was delivered to the servant.    Crompton, Just. 35b, pl. 7.    See *The King* v. *Bass*, 1 Leach, (4th ed.) 251.    Yet the emptiness of the explanation was shown by the fact that it still was held felony when the master delivered property for service in his own house.    Kelyng, 35. The last step was for the principle thus qualified and explained to be applied to a delivery by a third person to a servant in his master's shop, although it is possible at least that the case would have been decided differently in the time of the Year Books; Y. B. 2 Edw. IV. 15, pl. 7; Fitzh. Nat. Brev. 91 E; and although it is questionable whether on sound theory the possession is not as much in the master as if he had delivered the property himself.    *Rex* v. *Dingley* (1687), stated in *The King* v. *Bazeley*, 2 Leach, (4th ed.) 835, 841, and in *The King* v. *Meeres*, 1 Show. 50, 53.    *Waite's case* (1743), 2 East, P. C. 570; *S. C.* 1 Leach, (4th ed.) 28, 35, note.    *Bull's case*, stated in *The King* v. *Bazeley*, 2 Leach, (4th ed.) 835, 841; *S. C.* 2 East, P. C. 571, 572. *The King* v. *Bazeley, ubi supra; Regina* v. *Masters*, 1 Den. C. C. 332.    *Regina* v. *Reed*, Dears. C. C. 257, 261, 262.

The last mentioned decisions made it necessary to consider with care what more was necessary, and what was sufficient, to reduce the servant to the position of a mere custodian.    An obvious case was when the property was finally deposited in the place of deposit provided by the master, and subject to his control, although there was some nice discussion as to what constituted such a place.    *Regina* v. *Reed*, Dears. C. C. 257.    No doubt a final deposit of money in the till of a shop would have the effect.    *Waite's case*, 2 East, P. C. 570, 571; *S. C.* 1 Leach, (4th ed.) 28, 35, note.    *Bull's case*, 2 East, P. C. 572; *S. C.* 2 Leach, (4th ed.) 841, 842.    *The King* v. *Bazeley*, 2 East, P. C. 571, 574; *S. C.* 2 Leach, (4th ed.) 835, 843, note.    *Regina* v. *Wright*, Dears. & Bell, 431, 441.    But it is plain that the mere physical presence of the money there for a moment is not conclusive while the servant is on the spot and has not lost his power over it; as, for instance, if the servant drops it, and instantly picks it up

again. Such cases are among the few in which the actual intent of the party is legally important; for, apart from other considerations, the character in which he exercises his control depends entirely upon himself. *Sloan* v. *Merrill*, 135 Mass. 17, 19. *Jefferds* v. *Alvard*, 151 Mass. 94, 95. *Commonwealth* v. *Drew*, 153 Mass. 588, 594.

It follows from what we have said, that the defendant's first position cannot be maintained, and that the judge was right in charging the jury that, if the defendant before he placed the money in the drawer intended to appropriate it, and with that intent simply put it in the drawer for his own convenience in keeping it for himself, that would not make his appropriation of it just afterwards larceny. The distinction may be arbitrary, but, as it does not affect the defendant otherwise than by giving him an opportunity, whichever offence he was convicted of, to contend that he should have been convicted of the other, we have the less uneasiness in applying it.

With regard to the defendant's second position, we see no ground for contending that the detective in his doings was a servant of Sullivan, or that he had not a true possession of the money, if that question were open, which it is not. The only question reserved by the exceptions is whether Sullivan's ownership of the money prevented the defendant's act from being embezzlement. It has been supposed to make a difference if the right of possession in the chattel converted by the servant has vested in the master previous to the delivery to the servant by the third person. 1 Eng. Crim. Law Com'rs Rep. (1834), 31, pl. 4. But this notion, if anything more than a defective statement of the decisions as to delivery into the master's barge or cart, (*Rex* v. *Walsh*, 4 Taunt. 258, 266, and *Regina* v. *Reed, ubi supra*,) does not apply to a case like the present, which has been regarded as embezzlement in England for the last hundred years. *Bull's case*, stated in *The King* v. *Bazeley*, 2 Leach, (4th ed.) 835, 841; *S. C.* 2 East, P. C. 571, 572. *The King* v. *Whittingham*, 2 Leach, (4th ed.) 912. *The King* v. *Headge*, 2 Leach, (4th ed.) 1033; *S. C.* Russ. & Ry. 160. *Regina* v. *Gill*, Dears. C. C. 289. If we were to depart from the English decisions, it would not be in the way of introducing further distinctions. See *Commonwealth* v. *Bennett*, 118 Mass. 443, 454.

*Exceptions overruled.*