371 P.2d 226

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**John A. PEKE, Defendant-Appellant.**

No. 6827.

Supreme Court of New Mexico.

March 1, 1962.

Rehearing Denied May 17, 1962.

Spiess & Hackney, Albuquerque, for appellant.

Hilton A. Dickson, Jr., Atty. Gen., Boston E. Witt, F. Harlan Flint, Asst. Attys. Gen., for appellee.

CARMODY, Justice.

Defendant was convicted of embezzlement, and this appeal follows.

The questions raised have to do with (1) the propriety of an amendment to the information; (2) the proof as to entrustment; (3) a claimed variance between the allegations and the proof; (4) alleged failure of proof as to certain counts of the information; (5) the competency of evidence of a claimed collateral offense; (6) an attack on the testimony of an accountant; and (7) a challenge as to certain jury instructions.

The facts are extremely complicated; but in order to avoid any more ·detailed discussion under the various points than is absolutely necessary, we will summarize the pertinent facts.

Defendant Peke was the executive secretary of the Associated Plumbing, Heating and Piping Contractors of New Mexico, Inc., which will be termed hereafter the "State Association." Also involved is the Associated Plumbing and Heating Contractors of Albuquerque, which we will refer to as the "City Association." In addition, there were other local or district associations throughout New Mexico which cooperated with the State Association. The State Association and Peke had offices in a building owned by the City Association. The State Association had only one bank account, which was authorized by the board of directors, this being in the Albuquerque National Bank, although in 1953 a so-called "convention account" was opened in the American Bank of Carlsbad, New Mexico.

It is this latter account that is the source of a large part of the difficulty with which we are concerned.

Peke was not authorized to sign checks on the Albuquerque account, but the signature card of the Carlsbad account discloses that the president in 1953 and defendant Peke were authorized to write checks. Additionally, the Carlsbad account was never authorized by the board of directors, and actually was unknown or not remembered by any of the officials of the State Association except Peke.

The State Association consisted of master plumbers throughout New Mexico, and was designed to promote the general welfare of the trade. In addition to many other activities, it assumed the responsibility of collecting payments from master plumbers for the operation of a trust agreement, having as its name "New Mexico Pipe Trades Welfare Fund," which was for the benefit of journeyman plumbers. The State Association also processed insurance claims under this trust fund. The defendant Peke, on behalf of the State Association, had charge of these activities, attended the meetings of the board of trustees, and typed the minutes. However, the trust maintained a separate bank account, and the defendant was not authorized to write checks on this account. Although the defendant is not charged with embezzling any of the money belonging to the trust, it is of. importance, because testimony was received regarding the deposit of certain trust payments directly to the association's account, part of which was supposed to compensate for work done for the trust, and because evidence of an audit of the trust funds was introduced.

Another fund which must be discussed is that known as the "Fixture Stamp Plan," which was a source of considerable revenue. The problem as to this fund is whether it belonged to the State Association or to the Albuquerque City Association, for if it was the latter, then the charge of embezzlement from the State Association cannot be sustained as to many of the counts of the information. Money in the Fixture Stamp Plan account could only be withdrawn by checks signed by J. D. Smith, an accountant, and the defendant Peke, both signatures being required.

The defendant Peke was in charge of the State office and, during the period 1953 to 1958, more or less managed and directed the operation of the State Association, the Fixture Stamp Plan, and, to a lesser extent, the New Mexico Pipe Trades Welfare Fund. Following the discovery of the account in the Carlsbad bank, the account was closed and the defendant was charged with embezzlement. The information was in fifteen counts, charging Peke with embezzling some $38,148.49 in money, being the property of Associated Plumbing, Heating and Piping Contractors of New Mexico. Following an extended trial, the defense

rested without putting on any evidence, after making certain motions for a directed verdict, and the jury returned a verdict finding the defendant guilty of fourteen counts and not guilty as to one count involving the sum of $310.00. The claimed acts of embezzlement consisted of depositing certain checks belonging to the Association in the Carlsbad account and subsequently withdrawing the funds; the depositing of certain other checks in the defendant's own personal account in Albuquerque; and, lastly, the cashing of certain other checks at Franchini Brothers Delicatessen in Albuquerque.

As stated initially, the defendant relies upon several points of reversal, and we will consider them in the order submitted.

■ The first claimed error is the action of the trial court in permitting an amendment to the information on the morning that the case was set for trial. Count one of the information charged the defendant with the embezzlement of a total of $32,678.99, and, as stated to the trial court by the district attorney, the purpose of the amendment was to reduce the amount of this particular count to $27,857.27, because the original amount included some lesser amounts charged in eight other counts of the information.

Count one charged the embezzlement of a total amount between September 13, 1955, and March 12, 1958, whereas counts 2, 3, 4, 9, 11, 12, 13 and 14 charged embezzlement of specific sums on a definite date within the same period. It is obvious that unless the amendment had been made, the defendant could not have been convicted and sentenced on both count one and the other eight counts, because the latter eight would have been included within count one. See, State v. Quintana, 1961, 69 N.M. 51, 364 P.2d 120; and State v. Montano, 1961, 69 N.M. 332, 367 P.2d 95. However, it is equally apparent that if the charge had originally been made as proposed by the amendment, the defendant could not have objected, nor would any more nor any fewer defenses have been available. In essence, the amendment merely particularized the exact amounts charged and eliminated duplication. Considered thusly, the amendment corrected a matter of form only. See, 4 Wharton's Criminal Law and Procedure, § 1880. Section 41–6–37, N.M. S.A., 1953 Comp., provides as follows:

"41–6–37. Defects, variances and amendment.—(1) No indictment or information that charges an offense in accordance with the provisions of section 42–607 [41–6–7] shall be invalid or insufficient because of any defect or imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling or improper English, or because of the use of sign, symbol, figure or abbreviation, or because of any similar defect, imperfec-

tion or omission. The court may at any time cause the indictment, information or bill of particulars to be amended in respect to any such defect, imperfection or omission.

"(2) No variance between those allegations of an indictment, information or bill of particulars, which state the particulars of the offense, whether amended or not, and the evidence offered in support thereof shall be ground for the acquittal of the defendant. The court may at any time cause the indictment, information or bill of particulars to be amended in respect to any such variance, to conform to the evidence.

"(3) If the court is of the opinion that the defendant has been prejudiced in his defense upon the merits by any such defect, imperfection or omission or by any such variance the court may because of such defect, imperfection, omission or variance, unless the defendant objects, postpone the trial, to be had before the same or another jury, on such terms as the court considers proper. In determining whether the defendant has been prejudiced in his defense upon the merits, the court shall consider all the circumstances of the case and the entire course of the prosecution.

"(4) No appeal, or motion made after verdict, based on any such defect, imperfection, omission or variance shall be sustained unless it is affirmatively shown that the defendant was in fact prejudiced thereby in his defense upon the merits."

Also, § 41–6–38, N.M.S.A., 1953 Comp., provides:

"41–6–38. Misjoinder, multiplicity, duplicity and uncertainty.—(1) No indictment or information shall be invalid or insufficient for any one [1] or more of the following defects merely:

"(a) That there is a misjoinder of the parties defendant.

"(b) That there is a misjoinder of the offenses charged.

"(c) That there is duplicity therein.

"(d) That any uncertainty exists therein, provided it charges an offense in accordance with section 42–607 [41–6–7].

"(2) If the court is of the opinion that the defects stated in subsection 1, clauses (a), (b) and (c) or any of them exist in any indictment or information it may order the district attorney to sever such indictment or information into separate indictments or informations or into separate counts, as shall be proper.

"(3) If the court is of the opinion that the defect stated in subsection 1, clause (d) exists in any indictment or information it may order that a bill of particulars be filed in accordance with section 42–608 [41–6–8].

"(4) No appeal, or motion made after verdict, based on any of the defects enumerated in this section shall be sustained unless it is affirmatively shown that the defendant was in fact prejudiced in his defense upon the merits."

■ Duplicity in criminal pleading is the joinder of two or more distinct and separate offenses in the same count. See, 5 Wharton's Criminal Law and Procedure, § 1932. Thus, the amendment merely eliminated the duplicity contained in count one and was proper under the statute.

■■ The only claim of any prejudice to the defendant is that it would have been to his advantage to be charged with one count, rather than many. This is not true prejudice as is contemplated by the statutes. The purpose of the above provisions was to eliminate many of the mere technical matters, which in the past have often resulted in a complete miscarriage of justice. The statutory provisions allow the court and jury to determine the issues without becoming enmeshed in an underbrush of legal niceties

■ The defendant also argues that he was prejudiced by the amendment in that under the provisions of § 41–6–37(3), N.M. S.A., 1953 Comp., the court should have granted a continuance. As to this argument, the defendant would substitute in the statute the word "shall" for the word "may" in the first sentence of subsection three. We decline to so construe the statute. There was no suggestion or request that the trial be postponed because of the amendment, nor any intimation that the defendant would be prejudiced insofar as the presentation of his defense upon the merits. The trial court has a broad discretion in such matters which will not be overturned in the absence of abuse thereof, and we do not feel that the trial court abused its discretion in this instance.

■ Defendant next claims that, as to nine counts of the information, there was no evidence showing that the defendant was entrusted with any money of the State Association. In essence, defendant's contention is that he never received any money of the Association in a lawful manner, so that therefore the essential element of entrustment is lacking. In this connection, defendant maintains that inasmuch as he was not authorized to endorse or deposit checks of the State Association, the crime with which he should have been charged, if any, was forgery or obtaining money under false pretenses.

Embezzlement was not a crime at common law. Strictly speaking, the only similar crime at common law was larceny, but this did not include embezzlement, because under the holdings of the English courts, proof of larceny required a showing of trespass, i. e., a felonious violation of possession. As a result, a wrongful conversion following a lawfully acquired possession could not be larceny. In view of this situation, the first embezzlement statute, 39 Geo. III, Ch. 85, was enacted in 1799. The English courts, and some American jurisdictions whose legislatures enacted the rather restrictive language of the English statute, held that the statute must be very strictly construed and drew a sharp distinction between larceny and embezzlement. Other courts in this country, however, in ruling upon their particular statutes, have refused to follow such a strict construction, and have held, in effect, that one may be found guilty of embezzlement even though there may be elements of other crimes involved. See, Annotation, 146 A.L.R. 532. At an early time, this court recognized that our territorial statute was broader in scope than those of some other jurisdictions which had been modeled after the statute enacted in England. See Territory v. Maxwell, 1882, 2 N.M. (Gild.) 250, 37 P. 250, which contains a very able discussion of the difference between the statute as then in force in New Mexico and the so-called English type of statute.

See, also, State v. Taberner, 1883, 14 R.I. 272, 51 Am.Rep. 382; and Commonwealth v. Ryan, 1892, 155 Mass. 523, 30 N.E. 364, 15 L.R.A. 317, which is one of the outstanding opinions of the late Justice Holmes, written when he was a member of the Supreme Judicial Court of Massachusetts before his elevation to the Supreme Court of the United States. In State v. Prince, 1948, 52 N.M. 15, 189 P.2d 993, we defined the essential elements of the offense of embezzlement as follows:

" * * * (a) That the property belonged to some one other than the accused. (b) That the accused occupied a designated fiduciary relationship and that the property came into his possession by reason of his employment or office. (c) That there was a fraudulent intent to deprive the owner of his property. * * *"

Following the decision in State v. Prince, supra, the legislature enacted what now appears as § 40–45–19, N.M.S.A., 1953 Comp., which is our present embezzlement statute, and reads as follows, insofar as material·

"If any person who shall be entrusted with any property of another shall embezzle or fraudently [sic] convert to his own use or shall secrete with intent to embezzle or fraudently [sic] convert to his own use any such property, he shall be deemed guilty of embezzlement * * *."

We have been called upon to construe this statute in only one case: State v. Konviser, 1953, 57 N.M. 418, 259 P.2d 785. (State v. Seefeldt, 1949, 54 N.M. 24, 212 P.2d 1053, although hereinafter discussed, was based upon the old statute—§ 1543, Code 1915). In the Konviser case, although the conviction was reversed, the court very plainly pointed out that the question of entrustment is a question of fact for the jury:

"* * * the mere fact that one is an agent, servant or employee does not deny that 'entrustment' may characterize the custody of money or property in his possession as such agent, servant or employee. The powers of defendant as manager were broad and extensive and the evidence amply supports the jury in believing and finding 'entrustment' characterized defendant's custody of the money and property embezzled. * * *"

In State v. Seefeldt, supra, both possession and title to the property had passed to the defendant, and therefore the offense was not embezzlement. In this case, title to the money or checks remained in the Association until the acts of embezzlement. The cases are therefore clearly distinguishable, and it should also be noted that the Seefeldt case involved one occurrence, while the instant case involved matters occurring over a long period of years.

There is substantial evidence that the defendant, for some five years, acted as executive secretary of the State Association and, in such capacity, in effect, operated the business transactions of the Association, including the making of bank deposits and submitting reports to the board of directors. This evidence certainly supports the jury finding of entrustment of the money of the Association.

We have carefully examined the voluminous testimony, and are of the opinion that, as to entrustment, there is substantial evidence warranting the jury's verdict.

Allied to the problem of entrustment is the defendant's claim that, there having been no specific authority shown to have been granted to the defendant to endorse checks for deposit, therefore he was not shown to have been entrusted with the money of the Association. It was shown by the evidence that it was a part of the defendant's duties as executive secretary to receive checks from the members, in payment of their dues and other obligations. Even though there may have been no specific authority granted to the defendant to endorse checks, the record is replete with testimony showing that the defendant had implied authority to deposit checks as a part of carrying on the business of the Association generally, to keep the same operating, and to achieve the purpose for which it was intended. Judging solely

from the evidence, if there ever was a person in the position of trust, the defendant in this case occupied one.

The Association's office was operated entirely under the direction and supervision of the defendant Peke. Although the secretarial help kept some semblance of records as to the Fixture Stamp Plan and the New Mexico Pipe Trades Welfare Fund, practically all checks and deposits were handled by the defendant personally. Even the accountant, who had some duties with respect to signing some of the checks and making a type of examination of the books, made what was apparently only a cursory examination of some of the records every five or six months, and in so doing accepted those records that the defendant Peke made available to him. There was no attempt to cross-audit or even cross-check the various funds. As a result, large sums belonging to the Welfare Fund were placed in either the Association's regular bank account, or in the Fixture Stamp Fund account, and thereafter withdrawals from the latter were deposited in the secret account in Carlsbad. Also, other checks belonging either to the Association or to the Fixture Stamp Fund were deposited directly in the Carlsbad account.

The defendant also urges under this attack on the judgment that, the information having charged embezzlement of money, the charge was not proved because it was only shown that, at the most, the defendant took checks. There are cases, most of them quite old, which hold that such a variance is fatal. However, more recent authority is to the contrary, and, in addition, § 41–6–21, N.M.S.A., 1953 Comp., would seem to be a conclusive answer to this contention. The statute reads as follows:

> "In an indictment or information in which it is necessary to make an averment as to money, or bullion or gold-dust, current by custom and usage as money, treasury notes or certificates, bank notes or other securities intended to circulate as money, checks, drafts or bills of exchange, it is sufficient to describe the same or any of them as money, without specifying the particular character, number, denomination, kind, species, or nature thereof."

In view of the provisions of this section, it hardly seems necessary to cite any cases. Under the statute, the charge in the information of the offense of embezzlement of money includes checks. Compare, Stephenson v. State, 1940, 138 Tex.Cr.R. 384, 135 S.W.2d 1005; and Davis v. State, 1925, 196 Ind. 213, 147 N.E. 766. State v. Probert, 1914, 19 N.M. 13, 140 P. 1108, was decided before the enactment of the above statute. The defendant was fully advised of the nature of the charges against him, inasmuch as the bill of particulars specifically alleged that the state would rely

upon bank deposits and checks in addition to other testimony, as proof of the offense charged.

■ The defendant then urges that there is a fatal variance between the allegations of the information as supplemented by the bill of particulars and the proof in the case, with reference to nine of the counts. The basis of this claim of error is that the Fixture Stamp Plan was shown by the evidence to have been originally instituted by the Albuquerque City Association, and that the evidence is not sufficient to show that the Plan during the years of the claimed embezzlement belonged to the State Association. Many of the witnesses who testified in the case, being former or present officers of the State Association, were somewhat vague in their testimony as to who actually operated the Fixture Stamp Plan. Defendant has quoted the testimony of several of these witnesses, which, if considered alone, would seem to cast doubt upon the ownership in the State Association. However, when all of the testimony is considered, that of each witness in its entirety, and all the facts appearing from the exhibits, which were presented to the jury, we believe that the jury was fully justified in determining that the ownership of the fund was in the State Association. Unless such a determination was made, of course the charge as contained in the nine counts would of necessity fall; and the jury having found

to the contrary, on what we deem substantial evidence, we therefore find the point without merit. The cases relied upon by the defendant are not authority under the facts in this case, inasmuch as Territory v. Ortiz, 1895, 8 N.M. 220, 42 P. 61, related to an allegation of ownership by two persons and proof as to ownership in only one, and State v. Probert, supra, involved proof of ownership in a person other than the one alleged in the indictment.

Actually, even if there was a variance, which we do not concede, we doubt if it was such as would impair the substantial rights of the defendant. As was said in England v. United States, 5th Cir. 1949, 174 F.2d 466:

"Variance as to ownership has not the importance in federal criminal procedure which it had at common law. It now spoils a trial only when the substantial rights of the accused are impaired; and his rights to a correct accusation are generally said to be to have sufficient information as to the charge against him, and protection against being again placed in jeopardy. (Citations.) There was no ignorance on England's part of what property he was charged with taking, and we think there is no chance of a second jeopardy for it. * * *"

We agree. The defendant Peke knew what property he was charged with taking, and

there was no chance of his being held twice in jeopardy.

■ The defendant next urges that the court should have instructed a verdict as to four counts of the information, because the state had not proven embezzlement of money belonging to the State Association. These four counts involve four different checks, three for $112.50 and one for $75.00, two of which were made to John Peke, Executive Secretary, one to John Peke, and one to the order of the State Association. Two of these checks were cashed at Franchini Brothers and the other two bear the endorsement of John Peke.

As to this point, the defendant urges that there is no evidence that the dues, for which the checks were initially written, were unpaid, because those who owed the dues were never "dunned" for them. It is believed that the state satisfied its burden as to the embezzlement when it showed that the two checks were cashed and the other two were deposited in the defendant's personal checking account. It was not the responsibility of the state to go forward with proof to show whether or not the dues of the persons involved had been paid. The offense was shown to have been committed with the cashing of the checks, and it makes very little difference whether other funds were used, as defendant seeks to imply, to make up the discrepancy. As a matter of fact, there is no evidence showing either payment or non-payment of these dues. The embezzlement occurred at the moment of the cashing of the checks.

The defendant's next two points relate to the testimony as to the New Mexico Pipe Trades Welfare Fund and the testimony of the accountant as to the audit of this fund. The testimony shows that defendant Peke was the administrator of the fund on behalf of the trustees. This seemed to be a part of his duties as executive secretary of the State Association. Defendant seems to urge that as long as he is not charged with embezzling any funds from the trust fund, that therefore any testimony with respect thereto is inadmissible.

■ It is obvious that ordinarily when a defendant is on trial for a certain offense, the state cannot offer proof against him showing he has committed other offenses. However, such a rule does not prohibit the admission of evidence which throws light upon the guilt or innocence of the defendant, providing the same is material. See, State v. Bassett, 1921, 26 N.M. 476, 194 P. 867, wherein the rule, together with the reason for the exceptions, is explained. This is particularly true when it is necessary to show a common scheme or intent. See, State v. Bickford, 1914, 28 N.D. 36, 147 N.W. 407; and State v. Wetzel, 1914, 75 W.Va. 7, 83 S.E. 68, Ann.Cas.1918A, 1074. In Simmons v. State, 1932, 165 Miss. 732, 141 So. 288, it was said:

"* * * where the transactions are all of a series in a common and interrelated scheme or plan or system, devised and executed by the accused for the one end of embezzling from his employer, then all of the related transactions may be received in evidence. * * *"

See, also, Lewis v. People, 1942, 109 Colo. 89, 123 P.2d 398; and State v. Wolfe, 1936, 64 S.D. 178, 266 N.W. 116, 104 A.L.R. 464; and see notes in 43 L.R.A.,N.S., 774, and 62 L.R.A. 193 at 264.

■ The defendant urges that the testimony obtained from the accountant who audited the trust fund was inadmissible, because the charge did not include embezzling from this fund and because all of the primary records were not available in court, and, lastly, because at least a portion of the testimony was (so says the defendant) speculative, because of some doubt as to the amount of the commission or charge that the State Association was entitled to receive from the trust fund for its services in operating it. As to this latter objection, defendant cites State v. Konviser, supra, but we do not deem the same in point as to this issue. In Konviser, supra, almost the entire amount of the shortage was arrived at by what was deemed to be a speculative process on the part of the accountant. In the instant case, the testimony as to the charge was somewhat incidental and did not go to the merits of the entire case. It amounted merely to the auditor's giving his ideas as an expert witness, and the jury were at liberty to believe or disbelieve this testimony under the instructions of the court.

As to the availability of the primary records, it is apparent from an examination of the transcript that the trial court felt that the records were either present in court or were available to counsel upon demand. No showing is made that the defendant ever sought a ruling of the court on this matter, and there is no showing that he was actually prejudiced in any sense because the records were not actually introduced into evidence. See, State v. Schrader, 1958, 64 N.M. 100, 324 P.2d 1025.

For clarity, it should be noted that a large part of the funds claimed to be embezzled came initially from the trust fund. However, at the time of the embezzlement itself, the funds were the property of the State Association, being in the form of checks out of the trust fund, payable to the State Association. It is for this reason that the evidence as to the machinations of the defendant concerning the trust fund account are particularly pertinent in this instance. It makes very little difference, except as a showing of the general scheme, where the money initially came from. The defendant Peke was shown by the evidence to have obtained possession of money, or checks, belonging to the State Association, and to

have deposited them in the secret account at Carlsbad. This is the offense charged, and the one which the jury felt had been proven.

 Defendant then urges that the journal of income and expenditures of the State Association was improperly admitted into evidence. This journal was actually kept by the witness T. D. Smith, who was a registered public accountant, and was received into evidence over the objection of defendant, based upon the fact that it was not prepared under the defendant's direction and supervision. The testimony in the trial court, prior to the admission of the journal into evidence by the witness Smith, was that substantially all of the information contained in the record was received by Smith from the defendant Peke. The record contained merely bank deposits and expenditures, and was taken in part from the check book which was kept by the defendant Peke and in part from the deposit slips which had been prepared by the defendant.

It would appear from the testimony that about all the witness did in preparing the journal was to accept the information given to him by the defendant, the witness stating that he had "all the trust in the world" in the defendant. Even though the entries in the journal were made outside of the presence of the defendant, it appears from the evidence that defendant had a substantial control over the entries made therein.

Obviously, the defendant felt damaged by the testimony because it showed the manner in which the defendant was able to cover up the deposits made by him to the Carlsbad account, without there being any showing in the State Association's books of this fact. Even though the books were not kept under the immediate supervision of the defendant, they certainly were kept under his direction and with his knowledge and actual assent or cooperation. See, Hankins v. State, 1927, 115 Neb. 350, 213 N.W. 344; People v. Rowland, 1909, 12 Cal.App. 6, 106 P. 428; and Secor v. State, 1903, 118 Wis. 621, 95 N.W. 942. See, also, Annotation, 154 A.L.R. 279, as to admissibility of corporate books against officers or stockholders.

 Defendant lastly seeks a reversal on the basis of the fact that the trial court erred in refusing to grant five requested instructions. It would unduly lengthen this opinion to list the requested instructions and compare the same with those given by the court. It should suffice to say that we have carefully examined the instructions given by the court and are of the opinion that the court's instructions sufficiently covered the law of the case. In such a situation, it was not error on the part of the court to refuse the requested instructions, even though they correctly stated the law. See, Kilpatrick v. State, 1953, 58 N.M. 88, 265 P.2d 978.

From what has been said, we are of the opinion that there is no merit to the various claims of error. We have carefully considered each of the many authorities cited by the defendant, but find that they are not in point in connection with the facts of this case, or are not persuasive.

The judgment will be affirmed. IT IS SO ORDERED.

COMPTON, C. J., and CHAVEZ and MOISE, JJ., concur.

NOBLE, J., not participating.