550 So.2d 410 (1989)
Judy PENNOCK
v.
STATE of Mississippi.
No. 07-58644.
Supreme Court of Mississippi.
October 11, 1989.
Jacqueline Smith Pierce, Thomas J. Lowe, Jr., Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen., Mike C. Moore, Atty. Gen., DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
*411 ROBERTSON, Justice, for the Court:

I.
Evidence before us convincingly suggests that a secretary in the Division of Vocational Rehabilitation repeatedly forged the name of her blind, peer counselor, co-worker to bogus vouchers and illegally procured from the state auditor checks payable to fictitious or ineligible Voc Rehab clients, which when cashed netted her in excess of $10,000.00 of public monies set aside to aid the handicapped. She has been convicted of embezzlement. Our authority on appellate review is limited to the faithful application of the particular embezzlement statute under which the prosecution has elected to proceed, as there is no enforceable natural law of theft. On the facts the accused never had lawful possession or custody of the monies, and because of this she has not offended the statute, which thus exalts arid legal logic and unmistakably proclaims that a person cannot embezzle what she has stolen.
We reverse.

II.

A.
The Independent Living Center is a branch of the Division of Vocational Rehabilitation, a state agency. ILC performs services for disabled persons and thereby assists those persons to become more independent. The Center makes purchases, such as durable medical equipment, wheel chairs, hospital beds, artificial limbs and, as well, services such as attendant care and transportation for the benefit of its clients. These purchases are made with public monies provided jointly by the United States and the State of Mississippi.
In 1985-1986, Judy Pennock was employed as a secretary at ILC. Pennock was the defendant below and is the appellant here. She served with an ILC peer counselor, Larry Dixon, who was and is blind. Ida Vanlandingham was another ILC peer counselor during this period, serving on a part-time basis.
Beginning in January of 1985, Pennock and Vanlandingham embarked upon a course of conduct in which they appear to have pilfered in excess of $10,000.00 in public funds. Under their modus operandi, Pennock would prepare a voucher, a form labeled "statement of account," either in the name of an individual who was not eligible for Voc Rehab services or who was a fictitious person. The statement of account would reflect services  here either "attendant care" or "transportation"  rendered to the individual named as client. Pennock would submit these statements of account to the office of the State Auditor for payment and checks would be procured made payable to the client named in the statement. Before submission to the Auditor, however, each statement of account had to be authorized by an ILC counselor. Dixon was ILC authorized counselor. Because of his blindness, Dixon generally had Pennock sign his name to whatever papers were necessary. Pennock took advantage of this trust and supplied Dixon's signature to these bogus statements. There is no evidence, however, that Dixon in fact authorized Pennock to sign his name other than to legitimate statements of account, nor more particularly to any of the statements at issue. Before payment the statement of account required as well the signature of the client himself or herself. Vanlandingham performed this task. In due course, the Auditor's office would issue checks conforming to each statement of account and payable to the client. Pennock or Vanlandingham would intercept these checks. One or the other would then "endorse" the check, cash it and the two would split the loot.

B.
This criminal prosecution was formally commenced on December 8, 1986, when the Grand Jury for the First Judicial District of Hinds County returned an indictment charging Pennock with embezzlement of approximately $10,000.00 of monies properly belonging to the Division of Rehabilitation Services. Although the particular embezzlement statute is not identified in the indictment, the State concedes that the *412 prosecution is had under Miss. Code Ann. § 97-11-25 (Supp. 1989). In due course, the case was called for trial. Vanlandingham[1] was the star witness for the prosecution, providing another bit of evidence validating the Prisoner's Dilemma[2] and showing it more than a mere theorem of interpersonal behavior. Although she had confessed ab initio, Pennock took the witness stand in her own defense and denied all guilt, claiming either that her actions were authorized or that she had no knowledge of the fictitiousness or ineligibility of any clients. Pennock denied any forgeries. On July 17, 1987, the jury found Pennock guilty as charged. The Circuit Court sentenced her to a term of five (5) years in the custody of the Mississippi Department of Corrections.
Pennock moved for judgment of acquittal notwithstanding the verdict or, in the alternative, for a new trial. On August 12, 1987, the Circuit Court entered its order denying these motions. This appeal has followed.

III.
Pennock argues that, assuming everything the prosecution proved was true, the evidence is insufficient to establish that she violated Section 97-11-25.[3] That statute, in relevant part, declares it an offense for a person holding public employment to "convert to her own use any money ... which comes to her hands or possession by virtue of her office or employment," and labels that offense embezzlement. The Circuit Court instructed the jury that before it could find Pennock guilty, it must find, among other things, that the monies in issue had come into Pennock's possession "by virtue of" her employment and, thereafter, misappropriated.[4]
One not (mis)trained in the law may think this means that the accused need only have received the money because of or in connection with employment. Our law may and often has defined terms in ways dictioners and linguists would find abhorrent, see Stong v. Freeman Truck Line, Inc., 456 So.2d 698, 712 (Miss. 1984); McLaurin v. Mississippi Employment Security Commission, 435 So.2d 1170, 1171-72 (Miss. 1983), though we trust all would agree these should be kept to a minimum. By authoritative and enforceable declaration, the legal language "by virtue of office" required before the jury could convict that the prosecution prove that Pennock had lawful possession of the monies and thereafter converted them. The distinction was drawn in Barlow v. State, 233 So.2d 829 (Miss. 1970) where this Court said:
There are two ways an official may receive money or property; one is by virtute officii and the other is colore officii. When the Legislature passed Mississippi *413 Code 1942 Annotated Section 2120 (1956) [today's Section 97-11-25], they decided that a man should not be convicted of embezzlement unless the money or the property was received by virtue of his office. By virtue of his office means that the officer has a legal right to do that which he is doing. If he did not have a right lawfully to receive the property and yet received it as a justice of the peace he was acting under color of office. The embezzlement statute does not provide that a man is guilty when he acts under colore officii.
Barlow, 233 So.2d at 830-31.
A page of history need be recounted. Embezzlement was not a common law crime, see 24 Am.Jur.2d, Embezzlement § 2 (1970); see also Voss v. State, 208 Miss. 303, 304-05, 44 So.2d 402, 402 (1950) (embezzlement did not exist as a crime at common law); Hampton v. State, 99 Miss. 176, 183, 54 So. 722, 723 (1911) (same); McInnis v. State, 97 Miss. 280, 289, 52 So. 634, 636 (1910) (same); Hemingway v. State, 68 Miss. 371, 405, 8 So. 317, 319 (1890) (prior to adoption of the code of 1880, embezzlement was "an offense ... unknown to our jurisprudence"), but was a legislative remedy for an anomaly in the definition of the common law crime of larceny. For conviction of larceny, the common law required that the accused take the personal property from the possession of another against his will or without his consent; a trespass against possession was necessary.[5]See Averitt v. State, 246 Miss. 49, 58, 149 So.2d 320, 324 (1963); 50 Am.Jur.2d, Larceny § 23 (1970). Embezzlement statutes declared felonious that which theretofore was not  the misappropriation of another's property by one who had committed no trespass and was in lawful possession of the property.
The statute in question, Section 97-11-25, tracks our general embezzlement statute. The two contain like language, including the phrase "by virtue of office" that is controlling today. Compare Miss. Code Ann. § 97-11-25 (Supp. 1989) with Miss. Code Ann. § 97-23-19 (1972). The only real difference for the purposes of this case is that the class of persons covered under Section 97-11-25 (public officers and employees) is not included in the class of persons addressed by the general statute, nor vice versa.
However arbitrary or formalistic it may appear, Mississippi law is quite settled that embezzlement is the wrongful conversion of property lawfully possessed by the person charged. Lambert v. State, 518 So.2d 621, 623-24 (Miss. 1987); Sisk v. State, 294 So.2d 472, 474 (Miss. 1974); Jackson v. State, 211 Miss. 828, 831-32, 52 So.2d 914, 915 (1951).
When a person  even an agent of the owner  takes possession of property *414 with unlawful intent to feloniously convert the property to his own use at the time he acquires possession, he is guilty of larceny and not embezzlement.
Mahfouz v. State, 303 So.2d 461, 463-64 (Miss. 1974).
It is certainly true that in general Pennock was authorized to sign Dixon's name and indeed to handle checks received from the Auditor's office payable to clients, and by reason of these facts, the prosecution struggles mightily for affirmance. The argument founders on the fact that Pennock's authority was limited to legal submission of statements of account, to legal receipt of client checks from the auditor. Pennock had no authority to sign bogus statements of account for clients who were either fictitious or ineligible persons. Therefore, she had no authority to sign the statements of account in issue. There is no evidence that Dixon conferred upon Pennock authority to sign these statements of account. More importantly, Pennock had no authority to receive these checks because they were procured by her own and Vanlandingham's unauthorized actions. The actions for which Pennock has been prosecuted were on this record quite clearly performed by her under color of office and not by virtue of office.
The prosecution points to State v. Grady, 281 So.2d 678 (Miss. 1973) and Autry v. State, 230 Miss. 421, 92 So.2d 856 (1957), but finds no help as these were prosecutions and convictions affirmed under what is now Miss. Code Ann. § 97-11-31 (Supp. 1989), not Section 97-11-25. Section 97-11-31 declares it unlawful for any person to "commit any fraud" while "employed in any public office." We have considered whether we may uphold Pennock's conviction under Section 97-11-31, see Weaver v. State, 497 So.2d 1089, 1091-93 (Miss. 1986), but find that we may not. First, the prosecution concedes that it has proceeded against her under Section 97-11-25. Second, for present purposes the controlling statement of the law is the Circuit Court's instruction that the jury may not convict unless it find that Pennock received the funds by virtue of her employment and thereafter converted them to her own use.
We have considered further Simmons v. State, 165 Miss. 732, 141 So. 288 (1932) where an embezzlement conviction was affirmed, but there the defendant treasurer of a building and loan association had lawful possession or custody of the funds by virtue of his duties as treasurer before converting them to his own use. Ruffin v. State, 482 So.2d 231 (Miss. 1986) is no authority for affirmance. Ruffin converted to his own use an automobile which he had rented from National Car System, Inc. and the question was whether the fact that he gave a false name at the time he rented the car established that he was never lawfully in possession of it. Ruffin correctly found this fact inconclusive, not precluding a rational jury's finding that Ruffin had lawfully become a bailee and thereafter determined to convert the automobile to his own use.
The judgment of the Circuit Court is reversed and remanded to await the action of the next grand jury during which time Pennock may remain at liberty on the bond presently in effect. See Hentz v. State, 489 So.2d 1386, 1389 (Miss. 1986); Durr v. State, 446 So.2d 1016, 1017 (Miss. 1984).
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., and PRATHER, SULLIVAN and BLASS, JJ., concur.
DAN M. LEE and HAWKINS, P.JJ., and ANDERSON, J., dissent.
PITTMAN, J., not participating.
DAN M. LEE, Presiding Justice, dissenting:
I agree with the majority's observation that "the public would profit from a legislative reworking of all theft and misappropriation crimes." (Majority opinion pg. 413, n. 5). In my opinion, however, the facts of this case unquestionably establish that Pennock was guilty of embezzlement. For that reason I respectfully dissent.
Section 97-11-25 is a long statute, but it is not complicated by any means. Exerpting *415 the portions that apply in this case, the statute reads:
"Any ... person holding any public ... employment, ... or any other person undertaking to act for others and intrusted by them with business of any kind, or with money, ... [who] unlawfully convert[s] to his own use ... any money or other valuable thing which comes to his hand or possession by virtue of his ... employment ... shall, on conviction, be ..."
guilty of embezzlement. (emphasis added).
An examination of the facts in the case sub judice clearly shows that Pennock's acts came within the definition of § 97-11-25 and constituted the crime of embezzlement. Contrary to the majority opinion, under our law it matters not that the actions of Pennock may well be the subject of another defined crime or statute. Ruffin v. State, 482 So.2d 231 (Miss. 1986); Simmons v. State, 165 Miss. 732, 141 So. 288 (1932).
Pennock was a secretary for the Department of Vocational Rehabilitation, a State agency. Her immediate supervisor, Larry Dixon, was blind. As a result of his blindness, Pennock was given the authority to act on his behalf; Dixon entrusted Pennock with the authority to sign his name. Pennock also had the authority to type and process Statements of account, forward the Statements of Account to the State Auditor's Office for payment, and receive the checks that came into the office from the State Auditor.
Pennock was indicted and convicted of embezzlement under § 97-11-25. The modus operandi of the crime was as follows: Pennock and a co-worker (Van Landingham) created fictitious Statements of Account. Either one would sign Dixon's name to the Statement, which was then forwarded to the State Auditor's Office for payment. The checks from the Auditor's Office would be received by Pennock and Van Landingham, who would then forge the endorsement on the back of the check. Thereafter, Van Landingham's roomate would cash the check and Pennock and Van Landingham would divide the money.
The majority erroneously holds that the acts of Pennock do not constitute the crime of embezzlement under § 97-11-25 because she did not have lawful possession of the money she converted from the State "by virtue of her employment." They reach this conclusion based upon the jury instruction that said that before the jury could return a guilty verdict it must find that the monies in issue had come into her possession by virtue of her employment and were there after misappropriated. This is a correct statement of the law, for the money did indeed come into her possession by virtue of her employment.
Taking the definition of the term, "by virtue of office" from Barlow, the question becomes: Did Pennock have the authorization to do that which she was doing? The answer, I submit, is yes.
Pennock's immediate superior, Dixon, was blind. As a result of his blindness, Pennock was given the authority to act on his behalf; Dixon entrusted Pennock with the authority to sign his name. The majority draws a distinction to reach their conclusion in this case on very narrow grounds: the authority to sign extended only to those accounts which Dixon had previously approved. I submit that it was the authority to sign Dixon's name, in and of itself, with which Pennock was entrusted. That authority gave Pennock the key to the State coffer, the means with which to unlock the doors to State funds. Pennock received this authority and was entrusted with this "valuable thing" ONLY "by virtue of her employment"; had Dixon been sighted we would possibly be faced with an indictment charging forgery, or maybe larceny, not the question presently before us.
Did Pennock have a legal right to sign Dixon's name? Yes. Pennock was authorized to sign Dixon's name, which caused the state checks to be sent to co-defendant Vanlandingham and Pennock who then cashed the checks and split the proceeds. The majority concedes this point, but says that she had no right to sign Dixon's name to "bogus statements." That goes without saying, but it misses the mark; every embezzlement *416 involves some wrongdoing. Gradsky v. State, 243 Miss. 379, 137 So.2d 820, 822 (1962); May v. State, 240 Miss. 361, 127 So.2d 423 (1961).
The majority attempts to distinguish Simmons v. State, 165 Miss. 732, 141 So. 288 (1932), from the case sub judice. The defendant in Simmons, like Pennock, argued that assuming everything proven by the prosecution was true, he was not guilty of embezzlement because the facts tended to establish the crime of forgery, larceny or false pretense. This Court answered that argument:
... it is enough to say that it is immaterial that the acts of appellant ... may have involved another crime, since it is plain that what appellant did in the handling of that check was merely a means or an instrumentality fraudulently used by him to embezzle and convert to his own use the funds of his principal and which had been intrusted to him by virtue of his employment.
141 So. at 290. See also Ruffin v. State, 482 So.2d 231 (Miss. 1986) ("larceny, embezzlement and obtaining money under false pretenses stand on an equal footing, the distinction resting in the time of forming the criminal intent; and in instances where the criminal acts of a defendant will support a conviction on either of two theories, the court is not required `to draw fine hair-splitting distinctions and ascertain just at what moment the criminal intent was formed.'" citing State v. Russell, 265 S.W.2d 379, 381-83 (Mo. 1954)).
On the basis of the foregoing authority it matters not that Pennock could have been found guilty of larceny or false pretense; her actions also constituted the crime of embezzlement.
Today's opinion only serves to create a gap, rather than a "slip corner," through which lower-level State employees who misappropriate State funds may waltz, confident that, whatever their position and authority, they will escape prosecution because their actions were not done "by virtue of office or employment."
For the reasons stated herein I would affirm.
HAWKINS, P.J., and ANDERSON, J., join this dissent.
NOTES
[1] Records in the office of the clerk of court of the First Judicial District of Hinds County reflect that on December 8, 1986, Vanlandingham was indicted on a charge of embezzlement. As of this date, that case has not been tried or otherwise disposed of, and insofar as the record reflect, remains open and pending.
[2] United States v. Romano, 583 F.2d 1, 9 (1st Cir.1978); R. Axelrod, The Evolution of Cooperation 7-10 (1986).
[3] The complete statute reads:

If any state officer or any county officer, or an officer in any district or subdivision of a county, or an officer of any city, town or village, or a notary public, or any other person holding any public office or employment, or any executor, administrator or guardian, or any trustee of an express trust, any master or commissioner or receiver, or any attorney at law or solicitor, or any bank, or collecting agent, or other person engaged in like public employment, or any other person undertaking to act for others and entrusted by them with business of any kind, or with money, shall unlawfully convert to his own use any money or other valuable thing which comes to his hands or possession by virtue of his office or employment, or shall not, when lawfully required to turn over such money or deliver such thing, immediately do so according to his legal obligation, he shall, on conviction, be committed to the department of corrections for not more than twenty (20) years, or be fined not more than five thousand dollars ($5,000.00).
Miss. Code Ann. § 97-11-25 (Supp. 1989) [Emphasis supplied].
[4] When considering the legal sufficiency of the evidence to support a conviction, we measure the evidence against the substantive standards given the jury in the court's instructions so long as those instructions do not enlarge upon the statute or the indictment. Fisher v. State, 481 So.2d 203, 213 (Miss. 1985).
[5] Holmes noted the point and suggested a way out  a more sensible and inclusive definition of larceny, recognizing that misappropriation is the gravamen of the offense. See Commonwealth v. Ryan, 155 Mass. 523, 527-30, 30 N.E. 364, 364-65 (1892); Holmes, The Path of the Law, 10 Harv.L.Rev. 457, 469-70 (1897). Holmes' remedy is not available to us this day (a) because Pennock has not been prosecuted for larceny, (b) because the embezzlement statute under which she has been prosecuted, Section 97-11-25, and, more importantly, the jury instructions require a finding that Pennock had lawful custody or possession of the money and (c) because the distinction between "by virtue of office" and "under color of office" is well settled in our law. A quick perusal of our code reflects four separate embezzlement statutes directed to public officers or employees, Miss. Code Ann. §§ 97-11-25 thru 97-11-31 (1972 and Supp. 1989), five more directed to private citizens, Miss. Code Ann. §§ 97-23-19 thru 97-23-27 (1972 and Supp. 1989). Over and above the general distinction between grand larceny and petty larceny, we have at least eleven separate larceny statutes, Miss. Code Ann. §§ 97-17-41 thru 97-17-64 (1972 and Supp. 1989), some of which are rather quaint, e.g., stealing milk from a cow, Miss. Code Ann. § 97-17-55 (1972). Also within the field are countless others from false pretenses, Miss. Code Ann. §§ 97-19-1, et seq. (1972 and Supp. 1989) to shoplifting, Miss. Code Ann. §§ 97-23-93, et seq. (Supp. 1989), not to mention extortion, Miss. Code Ann. § 97-11-33 (Supp. 1989). Whatever benefit this crazy quilt may afford, "a slip corner is kept open for thieves to contend, if indicted for ... . [one], that they should have been indicted for ... [another], and to escape on that ground." Holmes, 10 Harv.L. Rev. at 470; see also Commonwealth v. Ryan, 155 Mass. at 530, 30 N.E. at 365. The public would profit from a legislative reworking of all theft and misappropriation crimes. See, e.g., Model Penal Code §§ 223.0, et seq. (1980); and LaFave and Scott, Substantive Criminal Law § 8.8 (1986).